UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM JAY STONE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C. PFEIFFER, et al.,<br><br>　　　　　Defendants. | No. 1:21-cv-01461-ADA-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT ANDERSON'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST THE ADMINISTRATIVE REMEDIES<br><br>(ECF No. 91) |

Plaintiff Adam Jay Stone is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Anderson's motion for summary judgment for failure to exhaust the administrative remedies, filed June 5, 2023.

**I.**

**RELEVANT BACKGROUND**

This action is proceeding Plaintiff's excessive force claim against Defendants B. Gonzales, G. Morales, K. Gonzales, and Anderson in violation of the Eighth Amendment.

Defendants filed an answer to the complaint on October 19, 2022. (ECF No. 48.)

On November 22, 2022, the Court issued the discovery and scheduling order. (ECF No. 59.)

As stated above, on June 5, 2023, Defendant Anderson filed a motion for summary

1 judgment for failure to exhaust the administrative remedies.  (ECF No. 91.)  Plaintiff filed an

2 opposition on June 23, 2023, and Defendant filed a timely reply on July 26, 2023.  (ECF Nos.

3 100, 109.)

## II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").  Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

///

///

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

In arriving at this Findings and Recommendation, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed

and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A.    Description of CDCR's Administrative Remedy Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any policy, decision, action, condition, or omission by the department or staff having an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2018).2 Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to use CDCR's grievance process to exhaust their claims prior to filing a complaint in court. See Sapp, 623 F.3d at 818; see also Woodford, 548 U.S. at 85, 86.

Relevant here, between May 11, 2020, and June 1, 2020, to exhaust claims related to an appeal, an inmate's appeal was required to go through three formal levels of administrative review to exhaust claims related to grievances for non-health care related issues. Cal. Code Regs. tit. 15, §§ 3084.2(c), 3084.7(a). However, between June 1, 2020, and January 10, 2022, an inmate's grievance was required to go through two formal levels of administrative reviews: the first level was with the Office of Grievances and the second and final level was with the Office of Appeals. Cal. Code Regs. tit. 15, §§ 3481(a), 3486(m). A decision from the Office of Appeals constituted the final decision for non-health care related grievances and exhausted the inmate's administrative remedies. (Id.)

A California prisoner is required to submit an appeal at the appropriate level and proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance, an inmate is required to "describe all information known and available to [him] regarding the claim including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge" and "include all supporting documents available to the claimant related to the claim or identity to the best of the claimant's ability all relevant records with sufficient specificity for those records to be located." Cal. Code Regs. tit. 15, § 3482(c)(2), (c)(4).

**B.     Summary of Plaintiff's Allegations**

Plaintiff suffers from post-traumatic stress disorder from two tours in Iraq. On May 11, 2020, at approximately 8:00 a.m., Plaintiff went to medical department in waist chains. Plaintiff advised the nurse and correctional officer that he was in fear for his life and needed to be placed in protective custody, but the officer put Plaintiff back in the medical holding cell with other inmates. Then Plaintiff was taken to the sergeant's office. The officers forcefully sat Plaintiff in a chair in front of sergeant Anderson while pushing his head down, twisting his wrists, and digging his elbows into Plaintiff's back. When the sergeant asked why Plaintiff's life was in danger, Plaintiff told Anderson that he refused to pay money "taxes" to another inmate who is a known Aryian Brotherhood member, and Plaintiff was threatened to be stabbed by the gang member and other white inmates. The sergeant then asked Plaintiff about drugs, cell phones, and other illegal activities, including weapons. When Plaintiff did not know the answer to the questions, sergeant Anderson told Plaintiff, "you better bring me something if you want to lock it up," meaning that Plaintiff needed to bring the sergeant something illegal to be placed in protective custody. Anderson then told the officers to take Plaintiff back to his same housing location and ordered officers to beat Plaintiff. During the escort, the officers struck Plaintiff multiple times in the stomach and threw him onto the asphalt, pushing his face into the ground while kneeing him in the back. An unknown officer told Plaintiff, "if you are going to be a bitch then we will wheel you to your cell." The officers then forced Plaintiff into a wheelchair. The officers proceeded then proceeded to strike Plaintiff in the stomach and twist his wrist. After Plaintiff was placed back in his cell, the officers told other inmates that Plaintiff was "PCing," meaning that Plaintiff was seeking protective custody and therefore inciting violence on Plaintiff.

Once Plaintiff was inside the cell he made what looked like a weapon to get protective custody like the sergeant ordered. When the next watched arrived on duty, Plaintiff showed officer B. Gonzales the harmless weapon by pointing to it on the floor and advising that he needed to be placed in protective custody. Gonzales told Plaintiff that he didn't care if Plaintiff's life was in danger and then proceeded to tell other inmates that Plaintiff was trying to "PC" to incite violence on Plaintiff.

1    At dinner chow while Plaintiff was handed his tray, Plaintiff spilled water on or by officer
2    K. Gonzales.  Gonzales did not get water on himself, and even if he did it was a very small
3    amount.  In the investigative services unit report by officer Gaddis, it was stated that there was a
4    lot of liquid substance on officer Gonzales.  However, the liquid substance was sweat and
5    perspiration under officer Gonzales arms from beating Plaintiff.  In response, officer K. Gonzales
6    opened the tray slot and sprayed Plaintiff with an excessive amount of pepper spray.  Plaintiff
7    complied with the demand to kneel on the floor, but Gonzales continued to deploy a vapor
8    grenade.  Plaintiff was told to back up and put his arms through the tray slot to be handcuffed to
9    which he complied.  Officer Morales then grabbed Plaintiff and intentionally slammed his head
10   into the door frame causing an eight staple laceration.  Morales then continued to slam Plaintiff
11   into every other door frame on the way out.  Plaintiff recognized officer Gonzalez voice stating,
12   "you should have told the sergeant what he wanted" and then tell the other officers to wait until
13   Plaintiff gets to the cages by the program office to beat him.  Plaintiff was not offered any water
14   to decontaminate.
15    Once Plaintiff was forced to the cages by the program officer, the officer pushed him
16   against one of the cages and proceeded to beat him striking him with their hands and batons.
17   When the officers got tired of beating Plaintiff, officer Morales threw Plaintiff into a cage and
18   gave him a wet towel and told him to wipe the blood off his face, head and shoulders before the
19   investigative service unit arrived.  Morales told Plaintiff to tell the nurse and investigative unit
20   that he fell or else Plaintiff would be beaten again and put back in the same housing location.
21   Morales then told Plaintiff to sign a property sheet stating that he received all his property or he
22   would be beaten again.
23    Plaintiff has documents and reports, including pictures from the investigative service unit
24   of his injuries to prove that he was beaten.  Plaintiff also has medical documents stating that he
25   was seeking protection because he was in fear for his life.  Plaintiff waited until he was sure of
26   receiving protective custody placement before filing an administrative appeal.  The appeal was
27   separated into two separate log numbers: use of force and staff misconduct.  The appeal was
28   rejected at both the first and second levels due to exceeding the time limits.  Plaintiff wrote the

complaint to the Office of Internal Affairs and Office of Inspector General but did not hear back.

### C.     Statement of Undisputed Facts[1]

1.     Plaintiff is a prison inmate currently housed at Kern Valley State Prison ("KVSP"). (ECF No. 22.)

2.     At all relevant times alleged in the operative First Amended Complaint ("FAC"), Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and incarcerated at KVSP.  (ECF No. 22.)

3.     Plaintiff alleges that on May 11, 2020, "Correctional Officers G. Morales, K. Gonzales, B. Gonzales, Anderson and unknown officers beat plaintiff with fists, batons, elbows, knees, and used excess amounts of pepper [] spray and deploye[]d a Vapor Grenade." (ECF No. 22 at 6.)

4.     Plaintiff alleges that he was assaulted by correctional staff.  (ECF No. 22 at 6.)

5.     Between May 11, 2020, and June 1, 2020, the California Code of Regulations Title 15, § 3084.1(a), captioned "Right to Appeal," stated: "Any inmate or parolee under the department's jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.  (Declaration of A. Leyva (Leyva Decl.) ¶ 4.)

6.     Plaintiff appealed the rejection of Log No. 34471 to the Office of Appeals. (Declaration of E. Moseley (Moseley Decl.) ¶ 8(a), Ex. 3.)

7.     On January 28, 2021, the Office of Appeals advised Plaintiff that the time to provide Plaintiff a response expired.  (Moseley Decl. ¶ 8(a), Ex. 4.)

8.     The Office of Grievances advised Plaintiff that he could appeal (Log No. 185338) to the Office of Appeals, which Plaintiff did.  Leyva Decl. ¶ 21(c), Ex. H; Moseley Decl. ¶ 8(b); see also Moseley Decl. ¶ 8(b), Ex. 5.)

### D.     Analysis of Defendant's Motion

Defendant Anderson argues that Plaintiff failed to submit a grievance alleging excessive force by him.

---

[1] Hereinafter referred to as "UF."

7

1    Plaintiff argues that he exhausted all the administrative remedies by way of grievances log numbers 28191 and 34471, and any delay in filing was due to his fear of retaliation.

Here, Defendant submits evidence that Plaintiff filed three grievances relevant to the claims at issue in this action, log numbers 28191, 34471, and 185338. (Leyva Decl. ¶ 21, 21(a), Exs. C, G.)

### 1.     Log No. 185338

Plaintiff submitted log no. 185338 on November 4, 2020, in which he challenged the disciplinary hearing results for a Rules Violation Report that Defendant K. Gonzales authored and referenced how Defendants K. Gonzales, B. Gonzales, G. Morales, and non-defendant officer M. Lopez pepper sprayed, cuffed, and beat Plaintiff on May 11, 2020.

The Office of Grievances identified two claims based on Plaintiff's grievance. One claim alleging use of force and the second claim challenging the disciplinary hearing results. (Leyva Decl. ¶ 21(c), Ex. H.) On November 29, 2021, the Office of Grievances rejected both claims as untimely. (Id.) Pursuant to California Code of Regulations, Title 15, section 3482, Plaintiff was required to submit the grievance within thirty days of being aware of the alleged misconduct. (Id.; Cal. Code Regs., tit. 15, § 3482.) To the extent this grievance challenged the alleged excessive force on May 11, 2020, Plaintiff's grievance was untimely as it was submitted on November 4, 2020. (Id.) As to the second challenge, Plaintiff was aware of the disciplinary hearing results on September 17, 2020, but he did not submit the grievance until November 4, 2020, after the thirty-day requirement. (Id.) Therefore, the Office of Grievances rejected both claims as untimely. (Id.) Plaintiff was advised that he could appeal both rejections to the Office of Appeals, which he did. (Leyva Decl. ¶ 21(c), Ex H; Moseley Decl. ¶ 8(b), Ex. 5.) The Office of Appeals denied the appeal on January 16, 2022. (Moseley Decl. ¶ 8(b), Exs. 5, 6.)

In his opposition, Plaintiff concedes that this grievance is not relevant to the claims raised in this action and is therefore not relevant to whether he exhausted the administrative remedies. (ECF No. 100 at 7, 10.)

///

///

2. <u>Log No. 28191</u>

In log no. 28191, dated August 7, 2020, Plaintiff alleged as follows:

> On May 11, 2020, I went to medical in chains. I told the nurse and c.o. that I needed protective custody/SNY placement. While in waist chains I was repeatedly hit in the stomach and back, wrists were twisted, and head pushed down while the 2nd watch se[r]geant demanded information from me. They man-handled me back to my cell in 117 A yard KVSP and told the inmates that I was PC'ing. I made a weapon, put it on the floor and showed Officer B. Gonzales. He stated that he did not care and that I should have gave the sergeant information earlier. He then told inmate Duran in 116 and others that I was PC'ing. When all else failed I threw water on K. Gonzales to get SNY placement. They pepper sprayed me, cuffed me, and slammed my head against the door frames. Then they beat me while I was in the room with cages. I received 8 staples in my head, welts, bruises, and abrasions all over my body. This violates the 8th Amendment of freedom from cruel and unusual punishment from the U.S. Constitution. It also violates 15 CCR 3300, 3378.5, and especially 3335. '…inmate shall be immediately removed from GP and placed in Ad. Seg.' The reason I waited past 30 days to file this 602 is to make sure I get SNY placement, so I will not be retaliated against and thrown back on a GP yard to get stabbed again. I just signed SNY paperwork today, 7 Aug. 2020. They have done similar things to two other inmates, one is Vernon Grant, and old cellmate. They have done this to many more. 'It is the duty of every employee to do everything possible to prevent disorders.'

(ECF No. 91-3, at 19-20.)

The Office of Grievances identified three separate claims asserted in this grievance: (1) allegations of use of force by Defendant K. Gonzales, Defendant B. Gonzales, Defendant Morales, and nondefendant Officer M. Lopez; (2) allegations of misconduct by a nurse; and (3) allegations involving misconduct against other inmates. (No. 19.) The first two claims were rejected as untimely, in accordance with Title 15, § 3482. (SUF No. 20.) Specifically, Plaintiff discovered the adverse event on May 11, 2020, but did not submit his claim within the thirty-calendar days, as required by the regulations. (Id.) The third claim, regarding Plaintiff's allegation involving staff misconduct against other inmates, was rejected on the grounds that the claim concerned harm to a person other than Plaintiff. (Id.) Plaintiff was advised that he could appeal the rejection decision of any of the claims to the Office of Appeals. (SUF No. 21.) However, Plaintiff did not appeal the rejections to the Office of Appeals. (SUF No. 22.) Accordingly, the Office of Appeals did not provide any response regarding Log No. 28191. (Id.)

Here, irrespective of whether Plaintiff is excused from the untimeliness based on his fear

9

of retaliation and whether he identified the excessive force claim against Defendant Anderson in this appeal, it could not and does not serve to exhaust the claims against him because it was rejected as untimely and Plaintiff did not appeal such decision. Because Plaintiff had the ability to appeal the cancellation of his third level appeal, his admitted failure to do so renders his appeal against Anderson unexhausted. See Wilson v. Zubiate, 718 F. App'x 479, 481-82 (9th Cir. 2017) (even assuming cancellation of grievance was improper, prisoner failed to exhaust his administrative remedies when he did not appeal cancellation); Cortinas v. Portillo, 754 F. App'x 525, 527 (9th Cir. 2018) (some remedy remained available because prisoner could have appealed cancellation decision); Hunter v. Sorheim, No. 2:15-cv-9253 DMG SK, 2018 WL 1475034, at *2-3 (C.D. Cal. Feb. 27, 2018) (where grievance was cancelled as untimely, plaintiff failed to exhaust administrative remedies because he could have appealed the cancellation), aff'd, 782 F. App'x 661 (9th Cir. 2019).  Plaintiff could not have been in fear of retaliation in seeking to appeal because he already filed the grievance and any fear had passed.  Accordingly, this appeal does not serve to exhaust the administrative remedies.

### 3. Log No. 34471

The Office of Grievances bifurcated log no. 28191 because the response only addressed Plaintiff's excessive force claims related to Defendants K. Gonzales, B. Gonzales, Morales, and non-defendant Officer M. Lopez. (SUF No. 23.) The Office of Grievances later identified that Plaintiff's grievance form also included a claim of excessive force by unnamed officers who "man-handled" Plaintiff, which was inadvertently not addressed by the Office of Grievance in its response to Log No. 28191. (Id.) Therefore, the Office of Grievances bifurcated Log No. 28191 and assigned the same grievance form a second log number: 34471, to address the "manhandling" allegation. (Id.)

On September 4, 2020, the Office of Grievances rejected Log No. 34471 because the claim was untimely, in accordance with Title 15, § 3482. (SUF No. 24.) Plaintiff appealed the rejection to the Office of Appeals. (SUF No. 25.) On January 28, 2021, the Office of Appeals advised Plaintiff that the time to provide Plaintiff a response expired. (SUF No. 26.)

Here, Plaintiff argues that the delay in filing this grievance was due to his fear of

1  retaliation. [A] prisoner is excused from the exhaustion requirement in circumstances where
2  administrative remedies are effectively unavailable, including circumstances in which a prisoner
3  has reason to fear retaliation for reporting an incident." Rodriguez v. Cty. of Los Angeles, 891
4  F.3d 776, 792 (9th Cir. 2018) (citing McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015)). "In
5  order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must
6  show that (1) 'he actually believed prison officials would retaliate against him if he filed a
7  grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the
8  prison official's action communicated a threat not to use the prison's grievance procedure and that
9  the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a
10 grievance.' " Id. (citing McBride, 807 F.3d at 987).

11       To this end, as stated above, in the grievance Plaintiff specifically alleged that the delay in
12 filing was due to his fear of retaliation of being subjected to physical injury unless and until he
13 was placed in the security housing unit. Plaintiff submits that he submitted the appeal on the
14 same day that he filed his security housing unit placement. In his first amended complaint,
15 Plaintiff alleges that Defendant Morales used excessive force on him, while Defendant Gonzales
16 told him "you should have told the sergeant what he wanted." (ECF No. 22 at 16.) In addition,
17 Defendant Morales told Plaintiff "to tell the nurse and Investigative Service Unit that the plaintiff
18 fell or the plaintiff will be beaten again and put back in the same housing location." (Id. at 17.)
19 In his opposition, Plaintiff submits that "Morales threatened to beat [him] again and throw him
20 back on A yard if he told anyone what happened and then made [him] wipe blood off of his face
21 and shoulders before the Investigative Unit showed up." (ECF No. 100 at 5.) Viewing the
22 allegations in the light most favorable to Plaintiff (as it must), the Court finds that Plaintiff's
23 statements constitute evidence that he actually believed he would be retaliated against if he
24 complained about the use of force, and the purported statements made to Plaintiff could
25 reasonably be viewed as a threat of retaliation. Plaintiff contends that he was subjected to the use
26 of force because he failed to provide certain information to Defendant Anderson, and he was
27 subjected to future harm by other inmates when officers told them Plaintiff was "PC'ing"
28 (seeking protective custody thereby inciting violence on him). Based on Plaintiff's allegations, a

reasonable prisoner of ordinary firmness would have understood defendants to be threatening plaintiff not to use the prison's grievance procedure. and Defendant has not carried his burden in response. See Brodheim, 584 F.3d at 1271 ((("We cannot say that, as a matter of law based upon the record before us, [that plaintiff] failed to meet this objective standard. A reasonable person may have been chilled.")

Defendant has not carried his ultimate burden in response. Albino, 747 F.3d at 1172. In fact, Defendant *erroneously* represents that "the exhaustion requirement does not contain exceptions based on fear of retaliation," citing to Ellington v. Dir. of Corr., No. 2:09-cv-2985-MCE-KJN P, 2010 WL 2353448, at *1 (E.D. Cal. June 8, 2010). (Def's Reply at 2, ECF No. 109.) However, several years ago in a 2015 case, the Ninth Circuit "recognize[d] expressly" "that the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies." McBride, 807 F.3d at 987. Consequently, Defendant's argument is not well-received. Accordingly, Plaintiff satisfies both factors of the test, and Defendant Anderson may therefore not rely on the affirmative defense that Plaintiff failed to exhaust his administrative remedies for the excessive force/failure to protect claim against him.

In addition, based on Plaintiff's allegations viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff sufficiently exhausted the administrative remedies as to his excessive claim against Defendant Anderson. The Court finds merit to Plaintiff's claim that his factual allegations against Defendant Anderson reflect that he failed to intervene in the use force and knew of and/or directed the use of excessive force on the entire day of May 11, 2020. (ECF No. 100 at 4.) As stated above, in this grievance Plaintiff alleged that the second watch sergeant (indisputably Defendant Anderson) demanded information from Plaintiff and because he did not provide it he was subjected to the use of force on May 11, 2020 which included being man-handled back to his cell. (ECF No. 91-3, at 19-20.) Such allegations are sufficient to give notice of Plaintiff's failure to protect claim against Defendant Anderson. Accordingly, the Court finds that Plaintiff has exhausted his claim against Defendant Anderson and the motion for summary judgment should be denied.

Case 1:21-cv-01461-ADA-SAB   Document 114   Filed 09/11/23   Page 13 of 13

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant Anderson's motion for summary judgment for failure to exhaust the administrative remedies be denied.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 8, 2023**

UNITED STATES MAGISTRATE JUDGE